IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) NO. 3:09-cr-00204 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| | ) |
| ELLIOT COLUMBUS MEDLIN | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is "Defendant's Motion to Reconsider Eligibility for Relief under 18 U.S.C. § 3582(c)(1)(a) and for Indicative Ruling." (Doc. No. 109, "Motion to Reconsider"). Via the Motion to Reconsider, Defendant asks the Court to reconsider its May 7, 2020 Order (Doc. No. 105) denying Defendant's Motion for Compassionate Release (Doc. No. 85, "Motion for Compassionate Release"), filed *pro se* by Defendant Elliott[1] Columbus Medlin and supplemented later by his subsequently appearing counsel in various filings.[2]

LAW GOVERNING COMPASSIONATE RELEASE MOTIONS

The Court begins by providing a discussion of the law governing compassionate release. Several (if not all) aspects of the discussion will specifically inform, and place in context, the crucial procedural history and substantive issues implicated by the Motion to Reconsider.

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act of 2018, P.L. 115-391, 132 Stat. 5239,[3] the district court may under certain circumstances grant a

---

[1] For whatever reason, the docket and various filings in this case reflect the spelling of the first name as "Elliot," but Defendant himself spells it with two t's at the end.

[2] Those filings include Docket Nos. 90, 99, 101, 103 and 104, each of which had at least one attachment.

[3] That paragraph of Section 603 provides:

(b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE

defendant's motion for compassionate release if what the Court will call the "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier."[4]

Once it properly can act on a motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court can reduce a sentence under that provision (for any defendant younger than 70 years old)[5] only if it finds extraordinary and compelling reasons to do so. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of showing that "extraordinary and compelling reasons" exist to justify release under the statute. *United States v. Hayward*, No. CR 17-20515, 2020 WL 3265358, at *1 (E.D. Mich. June 17, 2020). And the Court does not write on a clean slate in considering what qualifies as "extraordinary and compelling reasons."

Congress tasked the Sentencing Commission with promulgating "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [section] 3582(c) of title 18. . . ." 28 U.S.C. § 994(a)(2)(C). Congress directed the Sentencing Commission, in promulgating these policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific

---

RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

[4] In this case, the Court has determined that Defendant has satisfied the exhaustion requirements, finding that 30 days have elapsed since Defendant filed a request (the adequacy of which the Court does not contest) with the warden seeking compassionate release. (Doc. No. 105 at 3 n.4).

[5] This subparagraph provides an alternative ground for relief for defendants who are at least 70 years of age. *See* 18 U.S.C. § 3582(c)(1)(A). It is inapplicable here, however, because Defendant is only 60.

examples." 28 U.S.C. § 994(t). In response to these congressional instructions, the Sentencing Commission promulgated U.S.S.G. § 1B1.13, and its application note, which collectively comprise the policy statement(s).

Practitioners of federal criminal law are accustomed to treating the Sentencing Commission's policy statements as advisory only (especially in the aftermath of *United States v. Booker*, 543 U.S. 220 (2005)). They are exactly that in the context of a defendant's original sentencing—but not in the context of a motion under Section 3582(c)(1)(A). In the latter context, they are by statute mandatory, inasmuch as Congress has prohibited courts from granting a sentencing reduction unless "such a reduction is consistent with applicable policy statements issued by" the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[6]

Together, U.S.S.G. § 1B1.13 and its application note do two things that are relevant here. First, they define, in Application Note 1, "extraordinary and compelling circumstances" to apply in (and only in) situations falling within one or more of five separate and particular categories, which the Court discusses below. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(i)-(ii), (B), (C) & (D).[7] Second, they prescribe additional requirements for obtaining a sentence reduction where the defendant does meet the threshold requirement of "extraordinary and compelling circumstances."[8]

---

[6] In *Booker*, the Supreme Court found unconstitutional (*i.e.*, violative of the Sixth Amendment) Congress's directive that the Sentencing Guidelines are generally what was referred to as "mandatory," meaning that sentence generally had to be imposed within the guideline range calculated using the Sentencing Guidelines. To say the least, this limited Congress's ability to make anything about the Sentencing Guidelines mandatory in the context of an original sentencing. But such limitations do not exists in the context of a motion for sentence reduction under Section 3582(c)(1)(A), wherein the Sixth Amendment concerns driving the *Booker* decision are entirely absent.

[7] The Application Note also contains various other instructions for considering whether extraordinary and compelling circumstances exist. Such instructions need not be discussed here, as they do not affect the Court's resolution of the Motion to Reconsider

[8] It is worth noting that these other requirements—being, after all, *requirements*—are mandatory. That is to say, a defendant is *not* eligible for compassionate release merely because there are "extraordinary and compelling reasons" within the meaning of Application Note 1.

Specifically, for a defendant not yet 70 years old (such as Defendant), the court may reduce a sentence if (1) extraordinary and compelling reasons warrant a reduction, *and* (2) the defendant is not a danger to the safety of any other person or to the community, *and* (3) the reduction is consistent with the policy statement. *See* U.S.S.G. § 1B1.13(1)(A), (2) and (3). The Application Note indicates the third requirement may be redundant of the first two, inasmuch as it states that "any reduction made . . . for the reasons set forth in subdivisions (1) and (2) [*i.e.*, U.S.S.G. § 1B1.13(1) & (2)] is consistent with this policy statement." *Id.* at n.5.[9]

If the court does find these (two or three depending on how one looks at it) requirements satisfied, the defendant has met the basic eligibility for compassionate release. But even then, the Court does not automatically or necessarily grant the motion for a reduction; instead, it *may*, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce the term of imprisonment (and may impose a term of probation or supervised release that does not exceed the unserved portion of the original term of imprisonment). *See* 18 U.S.C. § 3582(c)(1)(A).

As discussed above, the Sentencing Commission has issued a binding policy statement regarding reduction of a term of imprisonment under Section 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13. As further mentioned above, Application Note 1 to U.S.S.G. § 1B1.13 speaks to what constitutes "extraordinary and compelling reasons," identifying five categories of situations where such reasons may be found to exist. Two of the five involve the defendant's medical condition, *i.e.*: (i) the defendant is suffering from a terminal illness, *see* U.S.S.G. § 1B1.13 cmt. n.1(A)(i); or (ii) the defendant is suffering from a serious physical or medical condition, *see* U.S.S.G. § 1B1.13

---

[9] Like many redundancies, this one may seem odd due to its apparent unnecessariness. But it seems motivated by the valid desire to ensure that the Sentencing Commission's criteria for a sentencing reduction expressly both: (a) included the congressional requirement, discussed below, that any reduction be "consistent with applicable policy statements issued by" the Sentencing Commission; and (b) clarified that the required consistency involved nothing more than satisfaction of U.S.S.G. § 1B1.13(1) & (2).

cmt. n.1(A)(ii)(I), or a serious functional or cognitive impairment, *see* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(II), or deteriorating physical or mental health due to the ageing process, U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(III), that substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. The next two categories relate to defendants over 65 and defendants with particular grave family circumstances, respectively; they are not applicable to the instant Motion.

As for the last of the five categories (sometimes referred to as the "catchall" category) the Application Note describes it as encompassing the situation where, *"[a]s determined by the Director of the Bureau of Prisons* ["BOP"]*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."* U.S.S.G. § 1B1.13 cmt. n.1(D).

## PROCEDURAL BACKGROUND

Via the Motion for Compassionate Release, Defendant had requested a reduction of his 169-month sentence under 18 U.S.C. § 3582(c)(1)(A) due to the COVID-19 pandemic. Defendant, who was then and still is currently detained at FCI Seagoville in Texas, sought early termination of his prison sentence (currently set to expire on December 10, 2021, according to BOP's searchable online "inmate locator," https://www.bop.gov/inmateloc), and suggested that upon release he be placed on home confinement to live with his wife. He grounded this request on several alleged circumstances related to the pandemic, including: his alleged increased vulnerability to COVID-19 due to his chronic obstructive pulmonary disease (COPD), diabetes, and age (60); the alleged enhanced vulnerability to COVID-19 in a prison environment; and the alleged inability of BOP to prevent or cope with an outbreak of COVID-19 at FCI Seagoville.

On May 1, 2020, the Government filed a response in opposition to the Motion for Compassionate Release. (Doc. No. 103, "Response Opposing Compassionate Release"). Therein, in pertinent part, the Government argued that Defendant had not shown "extraordinary and compelling reasons" within the meaning of any provision of Application Note 1(A)-(C), which of course necessarily would include Application Note 1(A)(ii)(I). (Doc. No. 103 at 8-12). Defendant thereafter replied, suggesting, in pertinent part, that he had shown "extraordinary and compelling reasons" under Application Note 1(A)(ii)(I) in particular. (Doc. No. 104 at 1).

In its May 7, 2020 Order denying the Motion for Compassionate Release, the Court, in pertinent part, [10] sided with the Government in ruling that Defendant had not shown "extraordinary and compelling reasons" under Application Note 1(A)(ii)(I). The Court based its ruling, in substantial part, on the following reasoning:

> [Application Note 1A(ii)(I-III)] plainly is inapplicable, primarily because Defendant's pertinent medical conditions, COPD and diabetes, cannot possibly be said to be conditions "from which he is not expected to recover." . . . Nor can it be said that he "is not expected to recover" from COPD and diabetes merely because a person with these conditions conceivably could die from one or both of them (as opposed to dying from COVID-19 *per se*) were the person to contract COVID-19.
>
> The provision is also inapplicable because there is no showing that Defendant's *underlying medical conditions* "substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 n.1(A). Defendant maintains that *conditions at FCI Seagoville* substantially diminish his ability to look out for himself via social distancing, but that is not the same thing.

(Doc. No. 502 at 18-19) (emphasis added).[11]

---

[10] There is considerable content in the Court's Order denying the Motion for Compassionate Release that was quite relevant at that juncture but is not relevant to the Motion to Reconsider. References to such content, and to the parties' prior arguments relating to such content, will be omitted or at least minimized herein, for the sake of clarity and brevity in addressing the issues implicated specifically by the Motion to Reconsider.

[11] Consistent with the footnote below reflecting the Court's questioning of the Government's current (more lenient) position, the Court's conclusion in the first sentence is based in part on the view that the language of "not . . . recover[ing]" does not strike the undersigned as necessarily applicable to conditions like COPD and Type-2 diabetes.

Defendant thereafter appealed that Order to the Sixth Circuit, raising a single issue: "When denying Elliott Medlin's motion for compassionate release, did the district court err by holding that Note 1(A)(ii)(I) to U.S.S.G. § 1B1.13 does not apply to chronic medical conditions like diabetes and COPD?" (Sixth Circuit Case No. 20-5561, Doc. No. 8 at 6). It is exclusively this prior holding of the Court that is the subject of the Motion to Reconsider.

In the meantime, the Government apparently changed its position regarding the existence of "extraordinary and compelling reasons" in cases like Defendant's. Specifically, the kinds of conditions that Government claimed on May 1 were not "extraordinary and compelling reasons" within the meaning of Application Note 1(A)(ii) were, soon thereafter, conceded by the Justice Department to constitute extraordinary and compelling reasons. The Court discussed this change in an opinion in a different case issued 26 days after its May 7, 2020 Order denying Defendant's Motion for Compassionate Release:

> From the Court's independent research, it has reason to believe that the Government's view in this case as to whether the requirements of Application Note 1(A)(ii)(I) have been satisfied—one of neutrality—is subject to an intervening department-wide change policy change whereby the Department of Justice would take the affirmative view that the requirements of Application Note 1(A)(ii)(I) *have* been satisfied here. A district court addressed this shift very recently in *Wise v. United States*, No. 1:18-cr-72, 2020 WL 2614816 (D. Md. May 22, 2020). In *Wise*, the court noted that "just last week, the Department of Justice adopted the position that any inmate who suffers from the chronic conditions associated with severe illness from COVID-19 are eligible for compassionate release." *Id.* at *7. The court explained:
>
>> After the drafting of this opinion was largely completed, the government amended its response. *See* ECF 185. In that filing, the government advised that the Department of Justice had recently "taken the position that inmates who suffer from a condition identified . . . as putting them at higher risk for severe illness from COVID-19 and who are not expected to recover from that condition, present an 'extraordinary and compelling reason' to be considered for compassionate release."

*Id.* at *6 n.4. The Government's filing at ECF 185 in that case had explained, in pertinent part:

> The Government writes to **amend** its Response to the Defendant's Motion for Compassionate Release and Sentence Modification. ECF 180. Since filing its response on May 11, 2020, undersigned counsel has been informed that the Department of Justice ("DOJ") has taken the position that inmates who suffer from a condition identified by the Center for Disease Control and Prevention ("CDC") as putting them at higher risk for severe illness from COVID-19 and who are not expected to recover from that condition, present an "extraordinary and compelling reason" to be considered for compassionate release—even if that condition in ordinary times would not meet the terms of the policy statement. *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).
>
> These CDC risk factors include:
> - People 65 years and older;
> - People who live in a nursing home or long-term care facility'
> - People of all ages with underlying medical conditions, particularly if not well controlled, including:
>   - People with chronic lung disease or moderate to severe asthma
>   - People who have serious heart conditions
>   - People who are immunocompromised
>     - Many conditions can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications
>   - People with severe obesity (body mass index [BMI] of 40 or higher)
>   - People with diabetes
>   - People with chronic kidney disease undergoing dialysis
>   - People with liver disease

*Wise v. United States*, No. 1:18-cr-72, Doc. No. 185 at 1-2 (D. Md. May 22, 2020) (emphasis in original).

To say the least, this policy had not been (or at least not always been) reflected in the Government's position in responses to motions for compassionate release brought in the wake of COVID-19. Far from it. The policy, in the Court's view, constitutes a major change; one that—helpfully for courts and mercifully to defendants—will largely eliminate the need for fact-intensive inquiries into whether a defendant's particular chronic condition on the above list will, in light of

conditions at the defendant's particular place of incarceration, satisfy U.S.S.G. § 1B1.13 Application Note 1(A)(ii)(I).

And if the policy applies here, then Defendant has shown "extraordinary and compelling reasons" for compassionate release pursuant to U.S.S.G. § 1B1.13 Application Note 1(A)(ii)(I) based on his Type 2 (or "II") diabetes alone. As the Government put it in *Wise*:

> [Defendant] does suffer from Type II diabetes, which is clearly identified as a risk factor by the CDC. Thus, consistent with current DOJ policy, the Government does not contest the Defendant's eligibility for being considered for compassionate release in this case because he suffers from a condition identified by the CDC as putting him at higher risk for severe illness. *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

(*Id.* at 2).

The Government has not brought this apparently nationwide policy to the Court's attention in this case, and the Court is loath to make assumptions about the Government's position in any particular case. And so the Court does not claim that the position set forth by the Government in the District of Maryland—based on the new policy—is for certain the position of the Government in this case. But the Court has reason to believe that, as apparently a nationwide DOJ policy, it necessarily *should be* the Government's position in this case. In any event, in this case "the [G]overnment leaves it to the discretion of this Court to determine whether Defendant's current medical condition and situation at FMC Fort Worth satisfy the 'extraordinary and compelling' standard." (Doc. No. 493 at 4).

Invited to exercise that discretion, the Court—considering DOJ's apparent new nationwide policy and the reasons articulated by each party as to why the standard of Application Note 1(A)(ii)(I) could be deemed satisfied in this case—concludes that Defendant has met his burden of satisfying the applicable "extraordinary and compelling reasons" standard of Application Note 1(A)(ii)(I) in this case based on his Type II diabetes alone.

This means that Defendant meets the requirements to be considered for compassionate release, provided that he is not a danger to other persons or the community. *See* U.S.S.G. § 1B1.13.

*United States v. Edwards,* No. 3:13-cr-12, Order, Doc. No. 502 at 11-14).[12] In short, it appears that as of May 1, 2020, the Government was taking the position that conditions like chronic asthma

---

[12] In a footnote it dropped amidst this text from *Edwards*, the Court noted: "Even though (as discussed herein) this position well may now represent the Department of Justice's uniform and nationwide view, the undersigned will

and COPD did not constitute "extraordinary and compelling reasons" within the meaning of Application Note I(A)(ii)(I). Such position is defensible and, in the Court's view, persuasive.[13] But shortly after May 1, the Justice Department adopted a new and more lenient (towards defendants) view nationwide. And consistent with that view, while continuing to maintain that Defendant should not be released, the Government now concedes what it did not concede before: that in light of Defendant's COPD and Type-2 diabetes, he has shown "extraordinary and compelling reasons" under U.S.S.G. § 1B1.13 cmt. app. n. 1(A)(ii)(I) and thus is eligible for further consideration for compassionate release. (Doc. No. 113 at 2).

It is this concession that forms the basis of Defendant's Motion to Reconsider. Defendant contends that given this concession, and the Court's opinion in *Edwards* resulting from just such a concession, the Court should reconsider its ruling that Defendant has shown not "extraordinary and compelling reasons" under Application Note 1(A)(ii)(I) to U.S.S.G. § 1B1.13.

---

not presume to hold the Government to this (or any other) position in other cases. For a variety of reasons, the Government conceivably could take a different position in one or more future cases. If it does, the undersigned will address those positions as they are presented." *Edwards,* No. 3:13-cr-12, Doc. No. 502 at 11 n.9. But as noted herein, the Government does not take a different position in the instant case.

[13] The Government could be taking the position that not every "chronic" condition is a condition from which the defendant/movant is "not expected to recover," inasmuch as the notion of "recovery" appears simply inapplicable to many kinds of conditions that would reasonably be considered "chronic." That is, the Government could refuse to concede that a defendant's condition is one from which the defendant is "not expected to recover"—a prerequisite to the applicability of Application Note 1(A)(ii)—merely because the condition is "chronic." But the Government is not taking this position. In addition, the Government could have taken the position that the defendant must show that *his condition itself*—and not merely the COVID-19 pandemic, or his condition combined with the pandemic, or his condition combined with the pandemic combined with the fact that he is incarcerated, or just the pandemic combined with the fact that he is incarcerated—substantially diminishes his ability to provide self-care within the environment of a correctional facility. But the Government is not taking this position either. It seems clear the Government is saying here—and has indicated pretty clearly in some other cases—that even if the defendant's particular condition plays *no role whatsoever* in the ability of the defendant to care for himself in prison (whether by, for example, doing hygienic things like washing and brushing teeth or by social distancing), the Government concedes that the defendant has a substantially diminished ability to practice self-care (in the form of social distancing in particular) *merely because the defendant is in a prison environment during the pandemic*. The Court is not convinced that such a concession is warranted by the language here at issue, but the Government is free to make this concession, and the Court will accept it in this case.

Defendant concluded his Motion to Reconsider by summarizing what he seeks from this Court pursuant to Rule 37 of the Federal Rules of Criminal Procedure:[14]

> [He] asks that, in light of the DOJ policy and this Court's ruling in Charles Edwards, the Court reconsider the question of eligibility. He further asks that the Court, pursuant to Fed. R. Crim. P. 37, state its willingness to reverse its previous ruling on eligibility. Finally, he asks that the Court ultimately exercise its discretion in Medlin's favor, ordering his immediate release because he faces a serious risk of severe harm at FCI Seagoville.

(Doc. No. 109 at 6).[15]

## DISCUSSION

The Court will provide a discussion only to the extent necessary to convey its positions as to the two (related) requests above that are currently ripe: (1) the request that this Court reconsider its prior ruling (Doc. No. 105) that Defendant was not eligible for compassionate release under Application Note 1(A)(ii)(I); and (2) the request that this Court state its willingness to reverse such ruling.[16]

---

[14] That rule, which went into effect only on December 1, 2012, provides:

**(a) Relief Pending Appeal.** If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
    (1) defer considering the motion;
    (2) deny the motion; or
    (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.
**(b) Notice to the Court of Appeals.** The movant must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1 if the district court states that it would grant the motion or that the motion raises a substantial issue.
**(c) Remand.** The district court may decide the motion if the court of appeals remands for that purpose.

Fed. R. Crim. P. 37.

[15] In his reply in support of the Motion to Reconsider, Defendant noted that his risk of harm had since increased by virtue of a recent sever outbreak of COVID-19 at FCI Seagoville and his personally contracting COVID-19. (Doc. No. 114 at 1-6).

[16] The Court believes it is vital to clarify the use of the terms "eligibility" or "eligible" in this context. The Court perceives that Defendant's current request is that the Court reconsider *only* its prior conclusion that his medical condition (as considered in the context of his incarceration at FCI Seagoville in the midst of the COVID-19 pandemic) does not constitute "extraordinary and compelling reasons" under Application Note 1(A)(ii)(I) for purposes of U.S.S.G. § 1B1.13(1)(A) and 18 U.S.C. § 3582(c)(1)(A)(i). (*See* Doc. No. 109 at 5) (noting that Defendant "asks that the Court state that it would grant Medlin's request for reconsideration and that it would rule he is eligible under Note

In essence, Defendant argues that if the notion that the moving defendant has shown "extraordinary and compelling reasons" within the meaning of Application Note 1(A)(ii)(I) was good enough for the Court in *Edwards* and is good enough for the Government in this case, it should be good enough for the Court in this case. The Court agrees. While the Government's concession in this case is hardly mandated, it is colorable and obviously made in good faith (as it inures to the benefit of Defendant). In short, the Government is free to concede that Defendant has shown "extraordinary and compelling reasons" within the meaning of Application Note 1(A)(ii)(I), and the Court is free to accept that concession. And the Court states unequivocally that it would accept that concession and thus, upon any remand from the Sixth Circuit, reverse its decision on this issue stated in its May 7, 2020 Order denying Defendant's Motion for Compassionate Release.

The Court would further note, for the benefit of all affected stakeholders, that such an action by this Court would not merely be an academic exercise. The Court has not decided, and has not been asked by Defendant to state,[17] whether it ultimately would grant compassionate

---

1(A)(ii)(I)."). This perception is buttressed by the fact that Defendant's appeal challenges only this conclusion, and not, for example, the Court's alternative conclusion that compassionate release for Defendant would not be warranted even if he could show "extraordinary and compelling reasons." (Doc. No. 105 at 17 n.15). In other words, Defendant asks the Court to state that it would now find that he has satisfied the requirement to show "extraordinary and compelling reasons" because (according to him) his circumstances fall within Application Note 1(A)(ii)(I). But any such finding would not, by itself, make Defendant "eligible" for compassionate release. As discussed above, a defendant is *not* eligible for compassionate release merely because there are "extraordinary and compelling reasons" within the meaning of Application Note 1. For a defendant (like Defendant) who is younger than 70 years old, there are two other requirements for eligibility: that the defendant is not a danger to the safety of any other person or to the community, and the reduction is consistent with the policy statement. *See* U.S.S.G. § 1B1.13(1)(A), (2) and (3). And even though (as discussed above) the latter of these two additional requirements apparently is illusory because it does not truly require anything not otherwise required, the former requirement is very real. That is to say, even if a defendant can show "extraordinary and compelling reasons," the defendant cannot obtain—*i.e.*, is not "eligible"—for compassionate release unless he or she is not a danger to the safety of any other person or the community. Such a defendant is "eligible" for *something*, however: *further consideration of his or her motion for compassionate release*, *i.e.,* an inquiry into whether he or she poses the specified danger and, if not, whether compassionate release is appropriate under the Section 3553(a) factors. When the Court refers to the notion of "eligibility"—including by referring to Defendant's references to his purportedly being "eligible" because he has shown extraordinary and compelling reasons—it does not mean to suggest that a defendant is eligible *for compassionate release* merely because the defendant has shown "extraordinary and compelling reasons."

[17] The Government suggests, at least conditionally, that the Court state whether it would ultimately grant compassionate release, (Doc. No. 113 at 6), but the Court declines the suggestion.

release to Defendant.[18] But the Court can say that it would give that question serious consideration. And in so doing, it would be mindful of several developments related to that question that have occurred since the issuance of the Court's May 7, 2020 Order denying the Motion for Compassionate Release. These include: FCI Seagoville evidently suffering a major outbreak of COVID-19; Defendant being infected with COVID-19; and Defendant growing ever closer to serving 100 percent of the lengthy sentence imposed on him (minus any applicable credit for good-time served) thus continuously diminishing (temporally, at least) the increased risk to the public that would result from his being released early rather than serving all of his sentence.

## CONCLUSION

The Motion to Reconsider (Doc. No. 109) is **GRANTED.** Consistent with the specific relief requested in the Motion to Reconsider, and pursuant to Rule 37 of the Federal Rules of Criminal Procedure, the Court states its willingness to reverse its decision as to whether Defendant has shown "extraordinary and compelling reasons" under U.S.S.G. §1B1.13 cmt. n.1(A)(ii)(I) such that Defendant's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) can be further considered. The Court also states its intention to act promptly, in the event of a remand, to effectuate such reversal and then decide whether Defendant meets the other applicable eligibility requirement(s) and, if so, is suitable for compassionate release considering the factors set forth in 18 U.S.C. § 3553(a).

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[18] Instead, as noted above, the Court has been asked only to state whether it would reverse its decision as to extraordinary and compelling reasons.